COMMONWEALTH OF MASSACHUSETTS
SUFFOLK COUNTY SUPERIOR COURT

---

| | |
|---|---|
| DIERMEIER CONSULTING ASSOCIATES, LLC, and PAUL DEL GALLO, | ) ) |
| Plaintiffs, | )   2584CV02397 |
| v. | ) |
| RUSSELL REYNOLDS ASSOCIATES, INC. and 63 PARTNERS, LLC | ) ) |
| Defendant. | ) |

---

### AMENDED COMPLAINT AND JURY DEMAND

This is a complaint for negligent and intentional misuse of Plaintiffs' intellectual property and proprietary information and trade secrets: specifically, by the act of Defendant Russell Reynolds Associates, Inc. ("RR") "buying" certain sensitive and confidential client information intellectual property from Daniel Diermeier ("Daniel"), and then learning that it was not properly "sold," but then using it despite learning as such, Defendant RR engaged in substantial wrongdoing. More specifically, when Defendant RR gained access to extremely unique client data and information in the banking industry, Defendant RR was able to use that information to boast and sell expertise to other companies in the banking industry and thereby gain new engagements and profit substantially. Plaintiff has suffered substantial harm, lost profits and lost goodwill as a result of Defendant RR's wrongful actions, and to protect and ensure Plaintiff's rights continue to be properly maintained, 63 Partners, LLC, partially owned by Dan Diermeier, and Hari Vallurupalli (with the third part owned by Plaintiff Paul DelGallo), is joined as a defendant herein

1

#10646124v1

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Diermeier Consulting Associates, LLC ("DCA") is a Delaware limited liability company duly organized and existing under law, with a 20 year history and dozens of Fortune 500 clients , and a principal place of business now in Boston, Massachusetts.

2. Plaintiff Paul Del Gallo ("Del Gallo") is an individual, and the managing director of Diermeier Consulting Associates, LLC., who resides in Boston, Massachusetts, and who developed the proprietary intellectual property at-issue herein and described below.

3. Defendant Russell Reynolds Associates, Inc. ("RR") is a foreign corporation with principal offices in New York City.

4. Defendant 63 Partners, LLC is a Delaware Limited Liability Company that is 10 percent owned by Dan Diermeier ("Dan"), and over 64 percent owned by Hari Vallurupalli ("Hari"). The remainder is owned by Paul Del Gallo. Dan resides in Tennessee and Hari resides in California.

5. Jurisdiction and venue are proper in Suffolk County Superior Court because the wrongful acts and omissions alleged herein caused injury substantially in the Commonwealth of Massachusetts to Plaintiffs, and specifically to Del Gallo. Defendant also conducts business in Massachusetts routinely. Defendant anticipates suit in Massachusetts due to its business here, and has a resident agent for service of process in Dartmouth, Massachusetts is Capital Corporate Services, Inc.

## FACTUAL ALLEGATIONS

6. Plaintiffs, Diermeier Consulting Associates, LLC, formerly owned by Daniel Diermeier ("Daniel"), and run by Paul Del Gallo since 2009, developed proprietary intellectual

2

#10646124v1

property and confidential client methodologies in "Cultural Analytics," among other offerings. Daniel was under a Services Agreement with Plaintiffs in that regard. See Exhibit A hereto. "Cultural Analytics", simply stated, is meant to represent a proprietary survey methodology used to determine true employee sentiment on various things, including without limitation, corporate culture. Cultural Analytics will drive corporate decision-making, improve operations, improve corporate governance and, ultimately, help a company strive to either satisfy or change its corporate culture for the better, making it a more productive and positive functioning entity. Del Gallo worked with Daniel and others to develop and refine the Cultural Analytics offering and analysis and to market it to customers for years.

7. Necessarily, Cultural Analytics coagulates survey data and workforce statistics that, standing alone, constitute confidential information from clients. Cultural Analytics coagulates the data and statistics in a proprietary way that is unique and that required substantial time, intellectual energy, software development, and money to refine. It thus uses trade secret information, and outputs information that itself constitutes a trade secret as that term is understood in the law in these and other ways. The client whose information is being gathered clearly has a right to know the resulting information and Cultural Analytics to be shared with it, but that is as far as the information should go. However, the harvester of the information – here, Plaintiffs – gain unique insight along the way, have access to data and statistics that builds Plaintiffs' expertise, and thereby have a unique base of knowledge, goodwill and reputation to sell and utilize elsewhere (all the while still preserving the client's confidential information). In short, not only is the data and proprietary method of deriving the "Cultural Analytics" sensitive and

confidential, but the "know how" of Plaintiff about the resulting information obtained is extremely valuable, unique and proprietary.

8. Plaintiffs duly protected all of this information, including its proprietary Cultural Analytics methodology and the information derived from clients through Non-Disclosure Agreements, Intellectual Property Agreements, Restrictive Covenant agreements, and the like. Plaintiffs' safeguards were within Plaintiffs' own operations and their own standard operating procedures, with Plaintiffs' own employees, and with clients through various methods including cross-license agreements with restrictions, services agreements with restrictions, and various covenants with restrictions.

9. Despite these protections, Daniel, directly and with the help of others, knowingly transferred Plaintiffs' intellectual property, trade secrets, and confidential client data to defendant, RR. This transfer happened on August 4, 2020 when a Membership Interest Purchase Agreement ("MIPA") was signed by which Daniel and others sold assets to RR. A true and correct copy of the MIPA (which Daniel originally denied existed, and tried to hide from Plaintiffs), is attached hereto as <u>Exhibit B</u>.

10. Daniel had substantial contractual obligations to Plaintiffs, however, and he did not own, or have the right to sell, what he sold to RR. Moreover, further encumbering him, Daniel's service agreement with Plaintiffs was terminated February 2018, and he had restrictive covenants through February 2021. To be clear, it was Plaintiff Del Gallo who was in charge of the company bearing Daniel's sur-name since 2009, and Del Gallo who had the right and authority to possess and ensure the company's confidential, proprietary and trade secret information remained with the Diermeier Consulting Associates.

11. Initially, when entering the MIPA, RR may have been misled by Daniel and others and may have thought it was purchasing assets and materials without any encumbrances to them being fully owned by Daniel and others as sellers ("Sellers"). However, RR could have and should have conducted basic and elementary due diligence to come upon obvious information that this was not true, contrary to what was being represented in the MIPA. Among other things, there were three lawsuits that should have put RR on notice:

- Daniel Diermeier v. Diermeier Consulting Associates, LLC, et al Cook County Illinois Circuit Court, Case No. 2019-CH-01643.
- Diermeier Consulting Associates, LLC, et al v. Russ Rosenzweig, Berkshire County Massachusetts Superior Court, Case No. 2076CV00094
- Russ Rosenzweig v. Hari Vallurupalli, Ventura County California Superior Court, Case No. 56-2020-00540108-CU-BT-VTA.

By looking at these lawsuits, RR would have readily seen that others had claims about the ownership of the intellectual property and client confidential information being purchased from Sellers.

12. The motive Daniel and others had as Sellers to hide information from RR was that, in the consulting world, if RR bought the information and wanted to use the information it was buying, RR would need to represent in its consulting agreements with its customers that it was the owner and no third party had rights to any of the information it was using. Thus, RR could, in effect, share and transfer the information it obtained to its clients.

13. After the MIPA (but before Plaintiffs were aware of the MIPA, as Plaintiffs did not become aware of the MIPA until September 22, 2022, a situation caused by, among other things, Daniel's confederates denying the MIPA's existence under oath in the Berkshire County litigation identified above, Plaintiff came upon information that RR might have had its confidential and proprietary information and approached RR to determine this

5

#10646124v1

matter. Plaintiff's worst fear was realized; RR did have its information. Plaintiff informed RR about the litigations noted above and also provided other documents to RR to support its position, but RR refused to take any precautions claiming it would continue to use the information it purchased and see how the litigations resolved. For example, there was a 2008 licensing and intellectual property agreement of which RR was made aware, attached hereto as <u>Exhibit C</u> and, of course, the Services Agreement at <u>Exhibit A</u>.  And, RR was made aware of the fact that representations of the Sellers in the MIPA (<u>Exhibit B</u> hereto) simply were not true.

14. However, RR should have taken immediate steps to cease and desist using Plaintiffs' proprietary information it did not have the right to "buy." Instead, RR unabashedly used Plaintiff's and its clients' confidential information that RR did not have the right to own to advise and guide RR's new clients and improperly interfered with Plaintiffs' contracts with Daniel in that regard. RR even presented Daniel as the "founder" of Cultural Analytics when he was not.  For example, Plaintiffs did work for TD Bank and gathered substantial intelligence by way of its Cultural Analytics product, but RR simply shared and transferred this information to another bank, Wells Fargo, as if RR had ownership rights to it all. In this regard, RR was able to present data, information to Wells Fargo, and boast an expertise and thereby reputational capital from its book of clients and industry wide experience to offer Wells Fargo advice and guidance. Daniel by contract had no clients of his own and was forbidden by the Services Agreement (see Exhibit A). RR essentially utilized Plaintiffs' trade secrets – its customer, TD Bank's, confidential and proprietary information and Plaintiffs' Cultural Analytics data and statistics, which it did not have the right to use and which it obtained from Daniel – for Wells Fargo (and

6

#10646124v1

likely others). Moreover, Plaintiffs have learned that RR's work for Wells Fargo was poor and off-base and ultimately, reflected poorly on Del Gallo (as if Del Gallo's methodologies with Cultural Analytics were somehow wrong, and thereby harmed Plaintiffs' positioning with Wells Fargo and other prospective clients).

15. It was not just the litigations above by which RR was on notice. Plaintiffs had asserted its rights in a number of other ways with Daniel and others (sending letters, filing charges, and notifying regulatory authorities), which Plaintiffs informed RR above, putting RR on clear notice that it was engaged in actions that were harming Plaintiffs, but Defendant persisted in misusing the trade secrets, proprietary information and intellectual property of Plaintiffs nonetheless. To a large degree, however, Plaintiffs were not able to say as much to RR as they wanted to. In the Cook County litigation, there was an injunction that Daniel obtained that enjoined Plaintiffs here (and defendant there) from speaking about Daniel or what he was restricted from, including by way of a June 9, 2021 Order in that matter issued by the Hon. Cecilia A. Horan that applied to Del Gallo individually. However, it appears that, based on the request for voluntary dismissal of that matter that all injunctive Orders expired on or about July 31, 2025 with the filing of the voluntary dismissal of that case.

16. Notably, there is a separate newly filed suit in Chicago, Illinois (Cook County) – commenced in August 2025 -- in which Daniel and one of his entities (Workplace Analytics LLC) is suing 63 Partners and Vallurupalli and others (but not Del Gallo) (2025L010162) to supposedly obtain a declaration of rights and damages. Daniel believes those defendants are placing him in a false light and tortiously interfering with his business opportunities by sending notices of restrictive covenants Daniel had. By way of

7

#10646124v1

this lawsuit, it appears that Daniel believes that he was not under restrictive covenants and the notices that were being sent about him are wrong. This clearly implicates the existing action herein, as it suggests, implicitly at worst, but explicitly at best, that RR should not have been given notice of Daniel's restrictions and somehow should not have been on notice on Daniel's restrictions and disputes about his rights to sell DCA's information.

17. And, as further background, originally, in the separate action in Cook County, noted above in Paragraph 11 (2019-CH-01643), Del Gallo was a defendant. However, Del Gallo was voluntarily dismissed as a defendant in that matter. That matter also was addressing Daniel's view that the defendants in that matter were somehow wrongfully giving others notice of Daniel's restrictive covenants and defaming him in some way and/or interfering with business opportunities as a result. Again, Del Gallo was voluntarily dismissed from that matter. And notably, again, Del Gallo is not a defendant in the new Cook County suit. That said, there is a Court Order from February 24, 2021 in the 2019 Cook County matter that provides as follows:

> 63 Partners, LLC and Vallurupalli agree that they will not in any way shape or form transfer, encumber or sell any intellectual property owned by 63 Partners, LLC or in any way jeopardize said intellectual property without first providing notice to Del Gallo and obtaining the permission of the Court.

With Del Gallo entitled to that notice, and Del Gallo having not been given any such notice, it must be declared that no such intellectual property could have been validly transferred from 63 Partners to RR either, and thus, RR's position of DCA's intellectual property is not excused by way of any action or inaction of 63 Partners. Moreover, this Court is now being asked to declare that 63 Partners never did, and still does not, have any rights to transfer or encumber DCA intellectual property in any way.

8

#10646124v1

18. RR benefited not just with Wells Fargo but from using information about Plaintiffs' other clients, including Santander, TD Bank, Hyatt, SC Johnson, and channel partners. In so doing, RR placed Plaintiffs at risk of breaching Plaintiffs' own obligations to other clients. RR did this not just out of a profit motive, but out of the motive of using misappropriated trade secrets it had no right to use so that it could harm Plaintiffs', claim the reputation of advising dozens of clients for a decade at the time, grab market share, all with the aim of limiting Plaintiffs' ability to compete fairly.

19. Plaintiffs have suffered significant financial, reputational, and competitive harm as a result of RR's actions, while RR has been unjustly enriched.

## CAUSES OF ACTION
### COUNT I v. RR Only
### Misappropriation of Trade Secrets (M.G.L. c. 93, §42 and Common Law)

20. Plaintiffs reallege and incorporate by reference paragraphs 1–19 as if fully set forth herein.

21. Plaintiffs developed and harvested trade secrets, took proper safeguards to protect it all internally and with customers, informed Defendant when it had been misappropriated by the Sellers, but Defendant continued to use it all despite that.

22. Defendant unfairly profited, and Plaintiffs have suffered substantial damages as a result, including lost profits, lost royalties, loss of exclusive use, and diminished business value in an amount to be determined at trial.

### COUNT II – v. RR Only
### Violation of M.G.L. c. 93A (Unfair and Deceptive Trade Practices)

#10646124v1

23. Plaintiffs reallege and incorporate by reference paragraphs 1–22 as if fully set forth herein.

24. RR's wrongful acts toward Plaintiffs were primarily and substantially in Massachusetts.

25. RR acts (negligently buying assets that could not be sold, intentionally using those assets while on notice of same, and generally, participating in acts which concealed the MIPA) were unfair and deceptive, and in trade and commerce, within the meaning of M.G.L. c.93A, §11.

26. RR's acts were willful and knowing, even if originally negligent, particularly in light of information given to it by Plaintiffs, and the concealment of the MIPA until September 22, 2022.

27. Plaintiffs have sustained substantial losses, estimated to be tens of thousands of dollars. Pursuant to Chapter 93A, Plaintiffs should be awarded multiple (treble) damages, and reasonable attorneys' fees, and costs under c.93A.

COUNT III – v. RR only
<u>Conversion</u>

28. Plaintiffs reallege and incorporate by reference paragraphs 1–27 as if fully stated herein.

29. Plaintiffs own confidential client data and intellectual property.

30. Defendant, after being on notice Plaintiffs property was wrongfully sold, continued to exercise dominion and control over Plaintiffs' property by using it for product development and services to such clients as Wells Fargo.

31. Plaintiffs have been deprived of their rights to control, use, and profit from such property.

32. Defendant's actions constitute conversion under Massachusetts law.

COUNT IV – v. RR only
<u>Tortious Interference with Contractual Relations</u>

#10646124v1

33. Plaintiffs reallege and incorporate by reference paragraphs 1–32 above as if fully stated herein.

34. Plaintiffs had contracts with Daniel and others whereby Daniel had restrictive covenants, was bound by confidentiality, and in which he recognized that Plaintiffs owned the intellectual property he was selling to RR.

35. Daniel breached those contracts. RR was put on notice of those breaches. Instead of adhering to the contracts, RR interfered with Plaintiffs' contractual rights and continued to use the trade secret information, enjoying the "fruit" of Daniel's breach. In so doing, RR tortiously interfered with Plaintiffs' contractual relationships.

36. RR did so with improper motive and means – *i.e.,* to enjoy misusing trade secrets and intellectual property with a seeming excuse of having acquired it innocently, all the while knowing it was not supposed to be using it because it was trade secret and confidential information that was not properly sold to RR.

COUNT V – v. RR only
Unjust Enrichment

37. Plaintiffs reallege and incorporate by reference paragraphs 1–36 above as if fully stated herein.

38. Defendant has been unjustly enriched by receiving and using Plaintiffs' intellectual property, trade secrets, confidential information, reputational capital, and goodwill, without paying fair value.

39. Equity and good conscience require restitution to Plaintiffs for the value conferred upon Defendant.

COUNT VI – v. RR and 63 Partners
Declaratory and Injunctive Relief

#10646124v1

40. Plaintiffs reallege and incorporate by reference paragraphs 1–38 above as if fully stated herein.

41. This Court should declare Plaintiffs' ownership rights and further Order that Defendant 63 Partners shall be declared, along with Defendant RR, not to have any ownership rights in Cultural Analytics and none of 63 Partners' actions shall be deemed to implicate RR's duties to Plaintiffs' not to use, encumber or transfer Plaintiffs' intellectual property, trade secrets, confidential information, reputational capital, and goodwill known as "Cultural Analytics" and the data and statistics derived from it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

a. Enter judgment in favor of Plaintiffs and against Defendants;

b. Award compensatory damages against RR in an amount to be proven at trial, including lost profits and the value of misappropriated intellectual property;

c. Award treble damages and attorneys' fees against RR under M.G.L. c. 93A;

d. Declare Plaintiffs the owner of its trade secrets, confidential information and intellectual property and issue permanent injunctive relief prohibiting Defendants from further use of such, or any miscommunications about such.

e. Award punitive damages against RR to the extent available under Massachusetts law to the extent allowed Massachusetts law); and

f. Award such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all counts so triable.

#10646124v1

                                    O'HAGAN MEYER, PLLC

                                    Counsel for Plaintiffs

                    By:   */s/ Jeffrey M. Rosin*
                          Jeffrey M. Rosin, Esq.
                          BBO # 629216
                          140 Kendrick Street, Bldg. C West, 2d Floor
                          Needham, Massachusetts 02494
                          (617) 843-6800
                          *jrosin@ohaganmeyer.com*

Dated:  December 17, 2025

#10646124v1