**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **DIERMEIER CONSULTING ASSOCIATES, LLC and PAUL DEL GALLO**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**RUSSELL REYNOLDS ASSOCIATES, INC, et al.,**<br><br>**Defendants.** | **Civil Action No. 25-13979-BEM** |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTION TO DISMISS**

**MURPHY, J.**

Plaintiffs Diermeier Consulting Associates, LLC ("Diermeier Consulting") and Paul Del Gallo ("Del Gallo") bring this action for misappropriation of trade secrets, unfair and deceptive trade practices, conversion, tortious interference with contractual relations, unjust enrichment, breach of contract, and breach of the implied covenant of good faith and fair dealing against Defendants Russell Reynolds Associates, Inc. ("Russell Reynolds"), Daniel Diermeier ("Daniel"), Russ Rosenzweig ("Rosenzweig"), Manu Kalia ("Kalia") and Florencio De Avila ("De Avila"). Before the Court is Defendants' motion to dismiss. For the reasons set forth below, the Court will grant Defendants' motion to dismiss all counts against Daniel, Rosenzweig, Kalia, and De Avila (together, the "Sellers") for lack of personal jurisdiction, and grant the motion to dismiss Counts I, II, IV, and VI as time-barred.

# I. <u>Background</u>

## A. <u>Factual Background</u>

The following facts are drawn from Plaintiffs' complaint, Dkt. 67 ("Complaint" or "Compl."), and are accepted as true for the purposes of the instant motion. Diermeier Consulting was formerly owned by Daniel and has been run by Del Gallo since 2009. *Id.* ¶ 10. Diermeier Consulting developed "proprietary intellectual property and confidential client methodologies in 'Cultural Analytics,'" which "represent[s] a proprietary survey methodology used to determine true employee sentiment on various things, including without limitation, corporate culture." *Id.* "Cultural Analytics coagulates survey data and workforce statistics that . . . constitute confidential information from clients." *Id.* ¶ 11. "Cultural Analytics coagulates the data and statistics in a proprietary way that is unique and that required substantial time, intellectual energy, software development, and money to refine," and therefore both uses, and outputs, trade secrets. *Id.* Plaintiffs protected the proprietary Cultural Analytics methodology and client information through non-disclosure agreements, intellectual property agreements, and restrictive covenants. *Id.* ¶ 12.

Notwithstanding these protections, Daniel, with the help of the other three Sellers, "knowingly transferred Plaintiffs' intellectual property, trade secrets, and confidential client data" to Russell Reynolds on August 4, 2020, when the Sellers signed a Membership Interest Purchase Agreement (the "MIPA"). *Id.* ¶ 13. The Sellers did not have the right to sell what they sold to Russell Reynolds and, in so doing, violated contracts that the Sellers had with Plaintiffs. *Id.* ¶¶ 13–14.

Though, "when entering the MIPA, [Russell Reynolds] may have been misled by the Sellers and may have thought it was purchasing assets and materials without any encumbrances to them," Plaintiffs allege that Russell Reynolds should have conducted "basic and elementary due diligence" that would have revealed this was not the case. *Id.* ¶ 15. Specifically, Russell Reynolds

should have been on notice that the ownership of the assets it was purchasing was disputed because of three then-pending lawsuits,[1] and because of Plaintiffs' report to the Securities and Exchange Commission that Rosenzweig was "potentially misrepresenting to investors that he owned intellectual property he didn't own." *Id.*

Plaintiffs were not aware of the MIPA until September 22, 2022, in part because "Daniel's confederates den[ied] the MIPA's existence under oath in the Berkshire County litigation" cited in note 1. *Id.* ¶ 17. When Plaintiffs became aware of the MIPA, they notified Russell Reynolds of the pending suits and informed Russell Reynolds that the assets it had purchased belonged to Plaintiffs. *Id.* ¶¶ 17, 19. Russell Reynolds "refused to take any precautions claiming it would continue to use the information it purchased and see how the litigations resolved," *id.* ¶ 17, and continued to use and benefit from Plaintiffs' proprietary information, *id.* ¶¶ 18, 20.

**B. <u>Procedural Background</u>**

Plaintiffs filed suit against Russell Reynolds in Suffolk County Superior Court on August 27, 2025, Dkt. 7 at 2, and filed a first amended complaint against Russell Reynolds and 63 Partners, LLC on December 17, 2025, Dkt. 1-1.[2] On December 24, 2025, Russell Reynolds removed to this Court. *See generally* Dkt. 1. Plaintiffs subsequently amended the complaint a second time to add four defendants—the Sellers. *See* Compl.; *see also* Dkt. 62. The Complaint raises claims for misappropriation of trade secrets (Counts I and II), unfair and deceptive trade practices (Count III), conversion (Count IV), tortious interference with contractual relations

[1] Compl. ¶ 15 (citing *Diermeier v. Diermeier Consulting Assocs., LLC*, No. 2019-CH-01643 (Cook County Illinois Circuit Court); *Diermeier Consulting Assocs., LLC v. Rosenzweig*, No. 2076CV00094 (Berkshire County Massachusetts Superior Court); *Rosenzweig v. Vallurupalli*, No. 56-2020-00540108-CU-BT-VTA (Ventura County California Superior Court)).

[2] Plaintiffs later dismissed all claims against 63 Partners, LLC. *See* Dkts. 54, 58, 62.

(Count V), unjust enrichment (Count VI), and breach of contract and breach of the implied covenant of good faith and fair dealing (Count VII). *Id.* ¶¶ 22–47.

On October 2, 2026, Defendants filed a motion to dismiss. Dkt. 88. The Court held a hearing on October 16, 2026, and took the motion under advisement.

## II. <u>Legal Standard</u>

Courts analyzing claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making its determination, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012). At the pleading stage, plaintiffs need not demonstrate that they are likely to prevail, but the "claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *García-Catalán v. United States*, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

## III. Discussion

Defendants move to dismiss both for lack of personal jurisdiction and on timeliness grounds.[3] "When faced with a motion to dismiss under both 12(b)(2) and 12(b)(6), a district court should ordinarily decide the 12(b)(2) motion first." *Ryan v. Newark Grp., Inc.*, 814 F. Supp. 3d 7, 16 (D. Mass. 2025).

### A. Personal Jurisdiction

Defendants move to dismiss all claims against the Sellers for lack of personal jurisdiction.[4] *See* Dkt. 88 at 8–14. "In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995) (internal quotation marks omitted). "Thus, in order to establish personal jurisdiction over the defendants, [the plaintiff] must meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment." *Cossart v. United Excel Corp.*, 804 F.3d 13, 18 (1st Cir. 2015). "Because the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process, . . . a determination under the long-arm statute is to precede consideration of the constitutional question." *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 326 (2017).

---

[3] The Court notes that Defendants only move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, not for lack of personal jurisdiction pursuant to Rule 12(b)(2). *See generally* Dkt. 88. However, the Court will construe their motion as a motion to dismiss under both Rule 12(b)(6) and Rule 12(b)(2). *See Sigros v. Walt Disney World Co.*, 129 F. Supp. 2d 56, 70 (D. Mass. 2001) (treating a motion styled as a motion to dismiss for failure to state a claim as a Rule 12(b)(2) motion where "[t]he thrust of the defendants' motion is . . . that this Court lacks personal jurisdiction over HRC").

[4] Daniel resides in Tennessee, Rosenzweig and Kalia reside in California, and De Avila resides in Nevada. *See* Compl. ¶ 4.

### 1. Massachusetts Long-Arm Statute

Defendants argue that this Court lacks jurisdiction over the Sellers under the state long-arm statute because the Complaint "alleges no act in the Commonwealth by any Seller in connection with the 2020 MIPA, and no relevant regular or persistent business conducted here by any Seller." Dkt. 88 at 13. Plaintiffs argue that the factual allegations in their Complaint and the assertions in Del Gallo's two affidavits—one submitted with Plaintiffs' opposition, Dkt. 91-6, and a supplemental affidavit submitted with Plaintiffs' post-hearing notice of supplemental authorities, Dkt. 95-1—demonstrate that the Sellers' Cultural Analytics-related conduct established jurisdiction under the state long-arm statute, *see* Dkt. 91 at 9–15; *see also* Dkt. 95 at 1–3.[5]

The Massachusetts long-arm statute provides that:

> A court may exercise personal jurisdiction over a person . . . as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; [and] (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

Mass. Gen. Laws ch. 223A, § 3.[6] In other words, "a plaintiff must establish that the defendant either transacted business in Massachusetts, committed a tort in Massachusetts, or caused tortious injury in Massachusetts, and the plaintiff must show that the cause of action arose from defendant's

---

[5] "[T]he plaintiff may plead sufficient jurisdictional facts in its complaint, may rely on jurisdictional facts documented in supplemental filings (such as affidavits) [] contained in the record, and/or may point to undisputed facts." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 123 (1st Cir. 2022) (alteration in original) (internal quotation marks omitted).

[6] Plaintiffs seemingly argue that all four long-arm provisions apply to the conduct at issue. *See, e.g.*, Compl. ¶ 6 (stating that facts in the jurisdiction section of the Complaint are "all contemplated with [Mass. Gen. Laws ch.] 223A, Section 3(a)-(d)"); *id.* ("All four Sellers caused the very tortious injury alleged in this case in Massachusetts, with the understood impact that they would be selling Plaintiffs' intellectual property, including Cultural Analytics, causing tortious harm in Massachusetts. [Mass. Gen. Laws. Ch. 223A] at Sections (3)(c) and (d)."); Dkt. 91 at 11 ("Cultural Analytics was conceived, developed, and commercialized through substantial Massachusetts activity. In other words, this is substantial information satisfying Chapter 223A, Sections 3(a) and (b)." (citation omitted)).

conduct here." *Tramonte v. Korean War Veteran's Ass'n, Inc.*, 2002 WL 745813, at *2 (D. Mass. Feb. 5, 2002).

**a. <u>Kalia and De Avila</u>**

The allegations against Kalia and De Avila are plainly insufficient to satisfy the Massachusetts long-arm statute. The only factual allegation specific to Kalia or De Avila in the Complaint is the statement that "Kalia and De Avila may not have had express contracts with Plaintiffs, but they had contracts that should be implied in fact that they should not sell something of Plaintiffs that did not belong to them" and that they "breached these implied contracts and/or implied covenants." Compl. ¶ 47.[7] This bare allegation is insufficient to subject them to jurisdiction under the Massachusetts long-arm statute. *See Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006) ("[P]laintiffs may not rely on unsupported allegations in their pleadings, but are obliged to adduce evidence of specific facts." (internal citations and quotation marks omitted)); *Lionetta v. InMarket Media, LLC*, 798 F. Supp. 3d 139, 146 (D. Mass. 2025) (Under the "prima facie method" of establishing personal jurisdiction, plaintiffs "'must go beyond the pleadings and make affirmative proof.'" (quoting *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 94 (1st Cir. 2024)).

Conclusory allegations that "[a]ll four Sellers caused the very tortious injury alleged in this case in Massachusetts, with the understood impact that they would be selling Plaintiffs' intellectual property, including Cultural Analytics, causing tortious harm in Massachusetts," Compl. ¶ 6, and that the Sellers "knew they were selling a product they had no right to sell, and all of them induced [Russell Reynolds] to buy a product it had no right to buy, understanding that their tortious injury,

[7] The only other two references to Kalia and De Avila are the opening paragraph, which merely characterizes them as two of the "Sellers," Compl. at 1, and a paragraph indicating that they reside in California and Nevada, respectively, *id.* ¶ 4.

and their breaches of express or implied covenants, would be felt and have an impact here in Massachusetts," Dkt. 91-6 ¶ 4, are insufficient. The two provisions of the Massachusetts long-arm statute that stem from "causing tortious injury" in the Commonwealth *also* require either that the conduct that caused the injury occur in the Commonwealth or that the tortfeasor regularly engages in business in the Commonwealth. Mass. Gen. Laws ch. 223A, § 3(c)–(d). Plaintiffs make no such allegations as to either individual. Accordingly, this Court lacks personal jurisdiction over Kalia and De Avila.

**b. Daniel and Rosenzweig**

**i. Section 3(a)**

"In order for jurisdiction to exist pursuant to § 3(a), the facts must satisfy two requirements: (1) the defendant must have transacted business in Massachusetts, and (2) the plaintiff's claim must have arisen from the defendant's transaction of such business." *Power v. Connectweb Techs., Inc.*, 648 F. Supp. 3d 321, 331 (D. Mass. 2023) (internal quotation marks omitted). "Although transacting business has been construed broadly, the test is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party." *Alianza Americas v. DeSantis*, 727 F. Supp. 3d 9, 35 (D. Mass. 2024) (internal citations and quotation marks omitted). Neither an isolated, minor transaction with a Massachusetts resident, nor a defendant's awareness that a plaintiff is located in Massachusetts, is sufficient. *Power*, 648 F. Supp. 3d at 332. Likewise, "a contractual arrangement between an out-of-state defendant and a Massachusetts company alone is not sufficient to establish personal jurisdiction under § 3(a)." *Id.* at 333.

Here, Plaintiffs allege that Cultural Analytics was developed in Massachusetts, and that the Sellers engaged in ongoing commercial conduct in Massachusetts. Compl. ¶¶ 7–8; *see also* Dkt. 91-6 ¶¶ 10–33; Dkt. 91 at 11. This is insufficient to establish personal jurisdiction under section

3(a), however, because, even assuming these contacts constitute transacting business for the purposes of section 3(a), the causes of action asserted against Daniel and Rozenzweig did not arise from the Massachusetts contacts Plaintiffs identify.[8] *See Fletcher Fixed Income Alpha Fund, Ltd. v. Grant Thornton LLP*, 89 Mass. App. Ct. 718, 722 (2016) ("The cases do not hold that unrelated contacts with the forum are relevant for specific jurisdiction under G.L. c. 223A, § 3(a) . . . . [O]ther forum-related activities must be associated with the challenged transaction between the parties in order to be relevant to the analysis."); *see also Backman v. Schiff*, 84 F.R.D. 132, 134 (D. Mass. 1979) ("The burden of establishing facts sufficient to support long-arm jurisdiction is on the plaintiff. Since Section 3 requires that the facts supporting long-arm jurisdiction also give rise to the plaintiff's cause of action, plaintiff's burden of proof can be met only by facts which support his claim." (citations omitted)). For this reason, though Plaintiffs identify section 3(a) as a source of personal jurisdiction, Compl. ¶ 6; Dkt. 91 at 11, such allegations—that Daniel and Rosenzweig conducted business in Massachusetts, and that the harm from their (out-of-state) sale was felt in Massachusetts—are more appropriately considered under section 3(d).[9]

Plaintiffs also allege that Daniel and Rosenzweig breached contracts with Plaintiffs. Compl. ¶ 46. But Plaintiffs' general allegations that "Plaintiffs had contractual rights with Daniel

[8] The Court acknowledges that "the 'arising from' standard is not rigorous, and is 'generously construed in favor of asserting personal jurisdiction, by applying a "but for" causation test.'" *Alianza*, 727 F. Supp. 3d at 35 (first quoting *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 n.3 (1st Cir. 2016), then quoting *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 112 (D. Mass. 2003)). But finding personal jurisdiction under section 3(a) based on an out-of-state sale, years after the Massachusetts conduct Plaintiffs identify, risks collapsing the distinction between section 3(a) and 3(d). *Cf. Frederick v. U.S. Olympic Comm.*, 2022 WL 4356468, at *5 (D. Mass. Sept. 20, 2022) ("Section 3(c) is intended to apply only when the act or omission causing the injury occurs within the Commonwealth. To give § 3(c) any broader meaning would render § 3(d) a nullity." (cleaned up)).

[9] Though Plaintiffs also gesture at sections 3(b) and 3(c) as sources of personal jurisdiction, *see supra* note 6, there are no factual allegations suggesting that Daniel or Rosenzweig "contract[ed] to supply services or things in this [C]ommonwealth," Mass. Gen. Laws ch. 223A, § 3(b), or that either one "caus[ed] tortious injury by an act or omission *in this commonwealth*," *id.* § 3(c) (emphasis added), as it relates to the alleged misconduct at issue. Accordingly, the Court finds that there is no personal jurisdiction over Daniel or Rosenzweig under either provision.

and also contractual rights with Rosenzweig," *id.* ¶ 46; "Plaintiffs duly protected all of this information, including its proprietary Cultural Analytics methodology and the information derived from clients through Non-Disclosure Agreements, Intellectual Property Agreements, Restrictive Covenant agreements, and the like," *id.* ¶ 12; "Rosensweig [sic] was also under a contract acknowledging the Confidential Information that belonged to Plaintiffs, and he had separate contractual (but, in pertinent part, similar) contractual obligations to Plaintiffs in that regard," *id.* ¶ 13; and "Daniel and Rosenzweig, and by virtue of their association with them, the other Sellers had substantial contractual obligations to Plaintiffs," *id.* ¶ 14, are insufficient to establish personal jurisdiction under the state long-arm statute. There are no allegations regarding the substance of the purported contracts, the circumstances or location of their negotiation, or who was party to them. *See Power*, 648 F. Supp. 3d at 333 ("[A] contractual arrangement between an out-of-state defendant and a Massachusetts company alone is not sufficient to establish personal jurisdiction under § 3(a)."); *M-R Logistics, LLC v. Riverside Rail, LLC*, 537 F. Supp. 2d 269, 275 (D. Mass. 2008) ("It is not true . . . that any contractual communication into Massachusetts is sufficient to establish personal jurisdiction. In the typical case, the focus is on the contacts relating to the formation of the contract; those contacts ordinarily must be instrumental to its formation to establish jurisdiction.").

Plaintiffs do allege, with greater specificity, that "Daniel was under a Services Agreement with Plaintiffs" regarding Cultural Analytics, Compl. ¶ 10, and provide the Services Agreement with their Complaint, Dkt. 69; *see also* Dkt. 95-1 ¶ 2 ("[W]hen [Del Gallo] acquired [Workplace Analytics, LLC], Daniel was bound by the Services Agreement . . . to 'service' work [Diermeier Consulting] needed from him, and to protect [Diermeier Consulting's] products and intellectual property, such as Cultural Analytics."). But Plaintiffs have, for the same reasons stated above,

failed to connect the Services Agreement to Massachusetts conduct sufficient to establish personal jurisdiction over Daniel. Ultimately, "[t]he plaintiff bears the burden of proving personal jurisdiction and must present specific facts to support its claim." *Ivymedia Corp. v. iLIKEBUS, Inc.*, 2015 WL 4254387, at *2 (D. Mass. July 13, 2015). Plaintiffs have failed to do so here.

**ii. <u>Section 3(d)</u>**

"Section 3(d) of the statute is applicable only if the defendant is subject to general personal jurisdiction in Massachusetts." *Power*, 648 F. Supp. 3d at 333 (internal quotation marks omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Here, neither Daniel, nor Rosenzweig, is domiciled in Massachusetts. *See supra* note 4. Accordingly, neither is subject to personal jurisdiction under section 3(d) of the long-arm statute.

**2. <u>Due Process Clause</u>**

"Since [the Court] find[s] that [Plaintiffs] did not establish facts which would support the valid exercise of personal jurisdiction under the state long-arm statute, it is unnecessary to reach the question of whether the exercise of jurisdiction under Massachusetts law is consistent with basic constitutional due process requirements." *Gray v. O'Brien*, 777 F.2d 864, 867 (1st Cir. 1985); *see also Roy v. FedEx Ground Package Sys., Inc.*, 2018 WL 2324092, at *6 (D. Mass. May 22, 2018) (similar).

**B. <u>Statute of Limitations</u>**

Defendants also move to dismiss Counts I, II, IV, and VI as time-barred against all Defendants because Plaintiffs had inquiry notice of the underlying claims as of March 30, 2022. Dkt. 88 at 4–7. Having found that the Court lacks personal jurisdiction over the Sellers, the Court

only considers this argument with respect to Russell Reynolds.[10] Plaintiffs counter that Russell Reynolds may not raise a defense to an amended complaint that it could have asserted in response to an earlier complaint, but failed to do so. Dkt. 91 at 6–7.

**1. <u>Timeliness</u>**

As a general matter, a party that has previously filed a motion under Rule 12 of the Federal Rules of Civil Procedure "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). "The purpose of Rule 12 is to eliminate unnecessary delays in the early pleading stages of a suit so that all available Rule 12 defenses are advanced before consideration of the merits." *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund*, 967 F.2d 688, 691 (1st Cir. 1992). For this reason, when a plaintiff files an amended complaint, a defendant typically may not assert new Rule 12 defenses that were available to it, but that it failed to raise in a prior motion to dismiss. *See Pruco Life Ins. Co. v. Wilmington Tr. Co.*, 616 F. Supp. 2d 210, 214–16 (D.R.I. 2009); *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1388 (3d ed. 2004) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.").

However, the type of Rule 12 defense at issue matters. While a defendant waives defenses listed in Rule 12(b)(2)–(5) by failing to raise them in an initial Rule 12 motion or responsive pleading, *see* Fed. R. Civ. P. 12(h)(1), a defendant may raise a Rule 12(b)(6) defense in a motion for judgment on the pleadings under Rule 12(c), even if it failed to raise it in an earlier Rule 12

[10] For this same reason, the Court need not consider Defendants' argument that, even assuming Plaintiffs did not have inquiry notice until September 22, 2022, Counts I, II, IV, and VI are nevertheless time-barred as against Sellers. Dkt. 88 at 7–8. The Court notes, however, that if the Court had personal jurisdiction over the Sellers, Counts I, II, IV, and VI, would also be time-barred as against the Sellers for the reasons set forth in this section.

motion, *see* Fed. R. Civ. P. 12(h)(2)(B); *c.f. Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir. 1983) (explaining that defendants wishing to raise personal jurisdiction, venue, or process-related defenses "must do so in their first defensive move"); *Pruco*, 616 F. Supp. 2d at 216 ("[W]hile the amended complaints . . . supercede [sic] the original complaints for all intents and purposes in the litigation, they do not revive Wilmington's personal jurisdiction defense.").

Given that Defendants can otherwise assert, for the first time, their statute of limitations argument in a Rule 12(c) motion,[11] and that Rule 12 was intended to avoid unnecessary delay, the Court will consider Defendants' statute of limitations argument even though it was not raised previously. *See, e.g.*, *Wadsworth v. Me. Sch. Admin. Dist. 40/Reg'l Sch. Unit 40*, 2020 WL 5880471, at *10 (D. Me. Oct. 2, 2020) (accepting a motion to dismiss raising new defenses to an amended complaint because "it is preferable to address the sufficiency of the complaint early in the litigation rather than dismiss the motion on technical grounds and revisit the same issues later under a different provision," and because "even if [the defendant] could not proceed under Rule 12(b)(6), he would be allowed to proceed with his motion as a motion for judgment on the pleadings under Rule 12(c)"), *aff'd sub nom.*, *Wadsworth v. Nguyen*, 129 F.4th 38 (1st Cir. 2025); *see also Hazzouri v. W. Pittston Borough*, 416 F. Supp. 3d 405, 413 (M.D. Pa. 2019) ("While . . . a technical reading of Rule 12(g) would prevent the defendant from raising issues that were available in the plaintiffs' first amended complaint, we find that to prevent the defendant from doing so at this point would only cause further delay in this case" and "inevitably lead the defendant to . . . moving for judgment on the pleadings on the same basis pursuant to Rule 12(c). In the interest of judicial expediency and economy, we will address the defendant's motion."

[11] A statute of limitations defense is considered under Rule 12(b)(6). *See Holder v. Bos. Police Dep't*, 2020 WL 2747855, at *1 n.2 (D. Mass. May 27, 2020).

(citations and footnote omitted)); *cf. Burns v. Bellingham Public Schools*, 2026 WL 2828660, at *3 (D. Mass. June 22, 2026) ("There's no pressing need to consider whether a Rule 12(b)(6) motion is technically proper in these circumstances, since the Court can properly consider the motion under Rule 12(c). . . . More to the point, to avoid pointless waste of time and energy, it makes sense to identify the viable—and non-viable—claims in the case before plunging into discovery."), *report and recommendation adopted sub nom.*, *Burns v. Town of Bellingham*, 2026 WL 2831640 (D. Mass. Aug 19, 2026). Accordingly, the Court will turn to the merits of Defendants' statute of limitations argument.

**2. <u>Merits</u>**

Defendants argue, and Plaintiffs do not contest, that Plaintiffs' trade secrets claims (Counts I and II) and conversion claim (Count IV) are subject to a three-year statute of limitations. Dkt. 88 at 4 (citing Mass. Gen. Laws ch. 93 § 42E; 18 U.S.C. § 1836; Mass. Gen. Laws ch. 260 § 2A); *see generally* Dkt. 91. However, while Defendants claim that Plaintiffs' unjust enrichment claim (Count VI) is likewise subject to a three-year statute of limitations because it "borrows the three-year limitation period of the tort and trade-secrets violation claims that arise from the same underlying conduct," Dkt. 88 at 4–5 (citing *Astellas Inst. for Regenerative Med. v. ImStem Biotechnology, Inc.*, 458 F. Supp. 3d 95, 106 (D. Mass. 2020)), Plaintiffs argue that the unjust enrichment claim is subject to a six-year statute of limitations "given it is premised upon unjust enrichment arising out of contract," Dkt. 91 at 8 (citing Mass. Gen. Laws ch. 260 § 2; *Dean v. Dean*, 2020 WL 6546853 (Mass. Dist. Ct. Sept. 30, 2020)).

Defendants have the better of the arguments. "Unjust enrichment, a claim sounding in equity, can be subject to a three-year statute of limitations if the claim arises from a tort, or a six-year statute of limitations if the claim arises from a contractual dispute." *Astellas*, 458 F. Supp. 3d at 106. In *Astellas*, the court applied a three-year statute of limitations to an unjust

enrichment claim because "Plaintiffs' amended complaint frames their unjust enrichment claim as a misappropriation of intellectual property," which "is a tort subject to a three-year statute of limitations." *Id.* Plaintiffs here likewise frame their unjust enrichment claim as flowing from the misappropriation of intellectual property. *See* Compl. ¶ 43 ("Defendants have been unjustly enriched by either selling and receiving money for Plaintiffs' intellectual property, Confidential Information and/or trade secrets or by receiving and using Plaintiffs' intellectual property, trade secrets, confidential information, reputational capital, and goodwill, without paying fair value."). Accordingly, the unjust enrichment claim is subject to a three-year statute of limitations.

"A cause of action for tort accrues 'when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct.'" *Astellas*, 458 F. Supp. 3d at 106 (quoting *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 205–06 (1990)); *see also Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 187 (1st Cir. 2006) ("A plaintiff is considered to be on 'inquiry notice' when the first event occurs that would prompt a reasonable person to inquire into a possible injury at the hands of the defendant."). Defendants argue that Plaintiffs' claims under the four counts at issue accrued at least as early as March 30, 2022, when the Berkshire Superior Court issued an order (the "Berkshire Court Order") that informed Del Gallo and DCA of the MIPA's existence and identified both the buyer and sellers. Dkt. 88 at 5; *see also* Dkt. 88-1. In addition, Defendants point to a memorandum Rosenzweig filed in Berkshire Superior Court (the "Rosenzweig Memorandum") that purportedly also put Plaintiffs on inquiry notice of their claims in June 2022, and a request for production filed by Plaintiffs (the "Illinois RFP") that same month in an Illinois action that "demonstrated how much they already knew about the MIPA." Dkt. 88 at 5–6; *see also* Dkt. 88-2; Dkt. 88-3.

Plaintiffs contend that the Court may not rely on materials outside the complaint for the truth of disputed factual assertions, and that "judicial notice of filings from another case establishes, at most, the existence of the litigation and its related filings." Dkt. 91 at 4. Plaintiffs argue that, though the Court may take judicial notice of such filings, the Court should reject Defendants' requests for inferences in their favor. *Id.* Given that Plaintiffs concede that the Court may take judicial notice the three documents Defendants identify,[12] the Court turns to the substance thereof.

The Berkshire Court Order states the following:

> Recently, the court received one document from the defendant that is the subject of this motion. The document is entitled Membership Interest Purchase Agreement, dated August 4, 2020 ("MIPA"). The document is between and among Novo Aurelius LLC, Russ Rosenzweig, Manu Kalia and Floencio De Avil [sic], identified as "the Sellers" and Russell Reynolds Associates, Inc. as "the Buyer." The MIPA relates to the purchase of interests in Cultural Analytics LLC. The document consists of 24 pages and is signed by all the parties.
>
> Attached to the Agreement is "Schedule A-1, a proposed *Contribution Agreement* between Workplace Analytics, LLC and Cultural Analytics LLC, Exhibit B proposed *Assignment of Membership Interests*, Exhibit C proposed Consulting Agreement with Exhibit A (Descriptions of Services), Schedule A-1 (Project Commodore Activities & Deliverables), Exhibit D (Form of Spousal Consent), Exhibit E (Competitors of Buyers), Exhibit E-1 (Competitors of Buyers), Exhibit F (Form of Non-Disclosure Agreement and Disclosure Schedules to Membership Interest Purchase Agreement---Contract, Intellectual Property & Financial Statements). The financial statements were of Workplace Analytics, LLC. . . .
>
> Although not clearly identified in the MIPA, Cultural Analytics LLC appears to provide "product, services and methodology . . . related to analyzing, determining and improving organizational culture and related attitudes and behaviors and determining individual fit or capacity to change organization culture, commonly referred to as 'Cultural analytics'". Exhibit 1 to the *Contribution Agreement.*

---

[12] *See also Cook v. Spaulding*, 433 F. Supp. 3d 54, 56 (D. Mass. 2020) ("A court ruling on a 12(b)(6) motion can consider 'documents the authenticity of which are not disputed by the parties.'" (quoting *Watterson*, 987 F.2d at 3)).

Dkt. 88-1 at 3 (emphasis in original) (footnote omitted). Filed in response to the Berkshire Court Order, the Rosenzweig Memorandum stated that "the MIPA . . . controls the 2020 sale of [Daniel's] IP to [Russell Reynolds]," and described Daniel's intellectual property as "highly confidential survey instruments that assess various aspects of corporate culture and performance" and as "provid[ing] management with empirical measurements of the well-being of their companies' corporate culture." Dkt. 88-2 at 2–3. Finally, on June 16, 2022, Plaintiffs filed their Illinois RFP, which requested, as relevant here:

> 2. The document entitled Membership Interest Purchase Agreement, dated August 4, 2020 ("MIPA"). The document is between and among Novo Aurelius LLC, Russ Rosenzweig, Manu Kalia and Florencio De Avila, identified as "the Sellers" and Russell Reynolds Associates, Inc. as "the Buyer." The MIPA relates to the purchase of interests in Cultural Analytics LLC. Include all 24 pages including the signatures.
>
> 3. All documents attached to the Membership Interest Purchase Agreement "Schedule A-1, a proposed Contribution Agreement between Workplace Analytics, LLC and Cultural Analytics LLC, Exhibit B proposed Assignment of Membership Interests, Exhibit C proposed Consulting Agreement with Exhibit A (Descriptions of Services), Schedule A-I (Project Commodore Activities & Deliverables), Exhibit D (Form of Spousal Consent), Exhibit E (Competitors of Buyers), Exhibit E-1 (Competitors of Buyers), Exhibit F (Form of Non-Disclosure Agreement and Disclosure Schedules to Membership Interest Purchase Agreement---Contract, Intellectual Property & Financial Statements). The financial statements of Workplace Analytics, LLC.

Dkt. 88-3 at 3.

Taken together, these documents demonstrate that Plaintiffs were on inquiry notice of their claims by June 2022, at the latest. Certainly, "[d]ismissing a complaint as untimely at the pleading stage is an unusual step, since [the] complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *McCabe v. Ford Motor Co.*, 774 F. Supp. 3d 349, 406 (D. Mass. 2025) (quoting *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015)). But here, that Plaintiffs were on inquiry notice is apparent from documents, the contents and authenticity of which is undisputed. Put simply, the first two

documents revealed to Plaintiffs the existence of the MIPA, the sale to which the MIPA relates, the parties to the MIPA, the titles of the exhibits to the MIPA, and a description of the intellectual property sold in the MIPA. *See* Dkts. 88-1 at 3, 88-2 at 2–3. Indeed, it is clear from Plaintiffs' own Illinois RFP, which parrots the language of the Berkshire Court Order, that the other two documents made Plaintiffs aware of the MIPA and its subject matter. Dkt. 88-3 at 3; *see also* Dkt. 88-1 at 3. This is sufficient for the purposes of inquiry notice. *Cf. MSP Recovery Claims, Series LLC v. Warner Chilcott PLC*, 2019 WL 1333269, at *5 (D. Mass. Mar. 22, 2019) ("Here, the facts relevant to [Defendant's] statute of limitations defense are publicly filed lawsuits and disclosures in securities filings that provided, or should have provided, Plaintiffs with the facts necessary to bring the claims asserted here. Thus, judicial evaluation of the statute of limitations at the pleading stage is appropriate.").

Plaintiffs argue that the documents are insufficient evidence of inquiry notice. Specifically, Plaintiffs emphasize that the Berkshire Court Order does not specify that "Cultural Analytics" was sold to Russell Reynolds, and that the Rosenzweig Memorandum states only that Daniel sold "*his* most prized intellectual property" but that "[n]owhere in that filing is any statement that Daniel sold what did not belong to him." Dkt. 91 at 5 (emphasis in original).[13] But the First Circuit has previously rejected the argument "that a statutory limitations period does not start to run until the potential defendant first delivers a gift-wrapped admission of its alleged wrongdoing." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 15 (1st Cir. 2019). "Were that the rule," the *Celexa* court noted, "very few limitations periods would ever commence, much less

[13] Plaintiffs also argue that Defendants concealed the MIPA and that, therefore, the statute of limitation should be tolled. Dkt. 95 at 3. But the very case Plaintiffs cite in support, *Abdallah v. Bain Cap. LLC*, 752 F.3d 114, 120 (1st Cir. 2014), states that "[t]he doctrine of equitable tolling also provides no relief to a plaintiff who knows of facts sufficient to bring the cause of action." Put simply, concealment does not toll the statute of limitations if the plaintiff nevertheless knows of, or could nevertheless discover, facts giving rise to the cause of action. *Id.* Such was the case here, where the Berkshire Court Order and the Rosenzweig Memorandum put Plaintiffs on notice of the relevant facts.

conclude." *Id.* Instead, the relevant question is "whether sufficient facts were available to provoke a reasonable person in the plaintiff's circumstances to inquire or investigate further." *Id.* (quoting *McIntyre v. United States*, 367 F.3d 38, 52 (1st Cir. 2004)); *cf. Sanchez v. United States*, 740 F.3d 47, 52 (1st Cir. 2014) ("To delay commencement of the running of the statute of limitations, the factual basis for the cause of action must have been inherently unknowable, [that is, not capable of detection through the exercise of reasonable diligence] at the time of injury." (alteration in original) (internal quotation marks omitted)). That standard has been satisfied here. Accordingly, Counts I, II, IV, and VI are dismissed as time-barred.

**IV. <u>Conclusion</u>**

For the foregoing reasons, Defendants' motion to dismiss all counts as against the Sellers for lack of personal jurisdiction and to dismiss Counts I, II, IV, and VI as time-barred is GRANTED.

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: October 30, 2026